June, 1809.

KILBOURN
v.
BRADLEY.

*Sutton*, 3 *Esp.* 108. were also read, and commented upon.

FREEMAN KILBOURN *against* SARAH BRADLEY.

If a usurious
security be
given up, and
a new securi-
ty taken, for
the principal
sum due, and
legal interest,
the latter will
be good.

MOTION for a new trial.

This was an action of ejectment.

The demanded premises had been mortgaged by *Aaron Bradley*, under whom the defendant claimed, to

The moral obligation, which the borrower of money at usurious interest is under, to pay the principal sum due, and legal interest, is a sufficient consideration to support a promise by him to pay such principal and interest.

4

the plaintiff, as collateral security for the payment of a promissory note for 1,616 dollars and 75 cents, and interest.

The defendant in her plea alleged, that this mortgage was made upon a corrupt and usurious agreement, which was set forth specially, in substance as follows: On the 10th of *May*, 1796, *John Bishop* applied to the plaintiff for the loan of 5,020 dollars, for one year. The plaintiff refused to make the loan, unless *Bishop* would purchase of him a pair of sorrel horses, worth 200 dollars, at the price of 500 dollars, and add that sum to the money loaned; and would give his promissory note for the amount, payable in one year, with interest, endorsed by *Jacob Ogden* and *Aaron Bradley*. These terms were acceded to, and complied with, by *Bishop*. Before the 31st of *January*, 1799, he paid the whole sum contained in the note, and interest to that time, except 1,500 dollars, and then failed; in consequence of which the plaintiff called upon *Bradley* to pay or secure the sum unpaid. *Bradley* accordingly gave the plaintiff his promissory note for that sum, and interest. On the 13th of *May*, 1800, the plaintiff called on him for payment; but not being able to make payment, at that time, he agreed with the plaintiff to give a new note for the principal and interest of his former one, the amount being 1,616 dollars and 75 cents, and to secure the same by a mortgage of the premises; which was accordingly done.

The replication contained a general traverse of the several matters alleged in the plea; on which issue was joined.

On the trial, it was contended by the defendant, that there was usury contained in the first mentioned note; and that the second note, secured by the mortgage, was given for the payment of part of the consideration of the first; and, of course, usurious. The plaintiff contend-

June, 1809.

KILBOURN
v.
BRADLEY.

ed, that no usury was reserved in the first note; and although it should be found, that usury was reserved therein, yet that it was proved, that upon the giving of the second note, which was secured by the mortgage, and which grew out of the first, all usury reserved in the first note was given up by the plaintiff, and never received by him; and, of course, no usury was reserved in the second note. The court directed the jury, that if they should find no usury in the first note, to find a verdict for the plaintiff; and that, although they should find that the first note was usurious, yet if they should find, that upon giving the second note, all usury in the first note was abandoned by the plaintiff, and never received, nor any part thereof reserved in the new note, they should, in that case, find a verdict for the plaintiff.

The jury returned a verdict for the plaintiff, therein finding, that the matters alleged in the defendant's plea were not true, nor were any of them true. The defendant thereupon moved for a new trial; and the court reserved the motion for the opinion of all the judges.

*Daggett* and *N. Smith*, in support of the motion.

The direction of the court to the jury consists of two parts. To the first, we take no exception. The second, we contend, is erroneous; and it is not the less so, because it does not appear from the statement contained in the motion, but that the facts in the case were such, as to warrant the verdict which was found, in conformity to the first part of the direction, without regard to the second. But one verdict was found; and that was upon the whole case. If the second part of the direction was correct, the facts to which the first related were perfectly immaterial. As to these facts, the jury might say, we will not inquire, since it is fully proved, that upon the giving of the new note, all usurious inte-

rest, if there was any originally, was expunged. If an erroneous charge has been given to the jury, which might have had an influence on their verdict, this court will grant a new trial.

In the *English* courts, it has been determined, and is now settled. that a new security, substituted for one originally usurious, is void. This point was expressly decided in *Tate v. Wellings*, 3 *Term Rep.* 537. Lord *Kenyon* said, as the former bond mentioned in the case was the consideration of the one on which the action was brought, if *that* were void as being given for a usurious consideration, most undoubtedly the latter would be also void. In the celebrated case of *Walton v. Shelly*, 1 *Term Rep.* 296. it was taken for granted, both by the bench and the bar, that if the two promissory notes, the delivering up of which was the consideration of the bond on which the action was founded, were contaminated with usury, the bond was void. In *Cuthbert et al. v. Haley*, 8 *Term Rep.* 390. it was admitted, that if the bond, and the notes for which the bond was substituted, had been between the same parties, the bond would have been void.

But admitting, that the second note cannot be considered as a continuation of the first, the *consideration* of the second was, at any rate, usurious. What was that consideration? Money due on a former contract to pay more than lawful interest. It makes no difference, whether it was for a part, or for the whole, of the money so contracted to be paid. The whole, and every part, was contaminated with usury. Take, however, the supposition, that those notes were partly good, and partly bad; it will still be difficult to distinguish one part from the other. You cannot put an *ear-mark* upon the illegal part.

But what would be the consequence, if the usurious part could be distinguished, and separated from the rest. If any thing, it would be this; that in every case where the illegal part was not actually reserved in the security, such security would not be usurious. A usurer taking a note for the principal and legal interest, and trusting to a parol promise, and the honour of the borrower, for a usurious premium, would stand on safe ground. Nay, if he should take two notes, one for the legal, and another for the illegal part, he might recover on the former, after the latter had been avoided for usury.

The consideration of the new security is the same, as far as it goes, as that of the old. It is not so large; but that is all the difference.

The case of *Barnes et al.* v. *Headly et al.* 1 *Campb. Cas.* 157. is directly in point; and though decided at *nisi prius*, it was on an issue out of chancery, and was well considered. There the transaction was originally usurious. A compromise afterwards took place between the parties; by the terms of which, all the usurious interest was to be struck off, and a further time allowed for the payment of the principal sum advanced, with legal interest. An agreement to this effect was accordingly signed, and all the former securities and accounts between the parties were destroyed. *Chambre*, J. held, that this agreement was void, as being given for the payment of *principal* whereupon usury had been reserved.

It is laid down by *Powell*, as an undoubted proposition, that wherever the consideration, which is the ground of the promise, or the promise itself, is unlawful, the whole contract is void. 1 *Pow. on Cont.* 176.

The counsel for the defendant then cited the cases of *Steers* v. *Lashley*, 6 *Term Rep.* 61. *Booth* v. *Hodgson*, 6 *Term Rep.* 405. *Mitchell* v. *Cockburn*, 2 *Hen. Bla.* 379. *Ex parte Mather*, 3 *Ves.* jun. 373. and *Aubert* v. *Maze*, 2 *Bos. & Pull.* 371. to show, that a claim, which originated in an illegal transaction, cannot be supported. The courts cannot enforce a contract in the face of law, because a party to such contract may be under a moral obligation to perform it.

*Terry*, contra.

1. The finding of the jury is such, that the court cannot say that there shall be a new trial, although there should have been a misdirection ; because the finding shows, that the direction could have no influence on the verdict. The plaintiff denies the truth of all the matters alleged in the plea. The jury have found them all, and every part, to be untrue. There was nothing, then, for the opinion of the court to operate upon. Suppose the pleadings had been such, that the jury might have given a verdict, saying, in terms, that the first contract was not usurious. Then there would clearly be nothing for the opinion of the court to operate upon. But the jury have found that the first contract was not usurious. That they have found so with regard to the other part makes no difference.

2. In the next place, we deny that the court below did misdirect the jury on the question of law.

Let it be kept in mind, that the exception to the second note is, that it was *usurious;* not that it was void for want of consideration. The defendant must be holden to the sole ground, that the note was usurious. This is his plea. He avers, that the first note was usurious, and that the second was a continuation of the first. On

this ground alone, the direction of the court to the jury proceeded; and on this ground alone, the defendant moved for a new trial.

The question is, what is a continuation of the contract? If the usury be expunged, and the borrower, from a sense of moral obligation, give a new note, this is not a continuation. It cannot require much argument to prove, that there may exist a moral obligation to pay borrowed money. The law destroys a usurious contract, not because it is immoral, but because it is inconsistent with the policy of the law. Even the statute against usury, while it renders void the contract, and inflicts a penalty upon the receiver, recognises the duty of the borrower to pay the principal sum borrowed. By the 9th and 10th sections, it is provided, that the obligor in a usurious security may file his bill in chancery, and obtain a decree for payment of the principal only. But chancery would never enforce such payment, if the party were under no moral obligation to pay. Further, it is evident from the relief, which the statute provides in such case, that the law does not consider the principal as contaminated whenever it can be separated from the usurious part.

The second note was not given for the purpose of carrying into effect the original contract. *That* was abandoned by the parties. The second contract was entered into by *Bradley*, in consideration of his having been benefited by the money loaned to him by *Kilbourn*. If he was under a moral obligation to pay this money, as I have endeavoured to show that he was, the consideration was undoubtedly good, and the contract neither usurious, nor a *nudum pactum*.

Suppose *Kilbourn* had given up the first note, by taking only the principal and lawful interest. He could not then be subjected to any penalty. Here, again, the

idea of a separation is clearly recognised. Suppose he had then lent the same principal and lawful interest for a longer period, and taken a note as security. Could it be pretended, that it would be usurious to *lend* the same money, which it was not usurious to *take?* But the case supposed is precisely the case before the court.

The counsel for the plaintiff commented minutely upon the case of *Barnes et al.* v. *Headly et al.* 1 *Campb.* 157. He contended, that the decision of *Chambre,* J. turned upon a verbal criticism, which made nonsense of the statute. " *Contracts,* whereby there shall be reserved." &c. is intelligible; but " any *principal,* whereby there shall be reserved," &c. is not. If Mr. Justice *Chambre* is not a better *lawyer,* than this reporter makes him a *grammarian,* his opinions will not have much weight. " *Contracts* is obviously the antecedent, to which the relatives whereupon" and " whereby" refer. The decision of Mr. Justice *Lawrence,* in *Wright* v. *Wheeler,* 1 *Campb.* 165. *in notis,* rests on higher ground. His reasoning is clear and just; it is unanswerable, and directly in point for the plaintiff.

BY THE COURT. The statute against usury, on principles of public policy, renders void contracts upon usurious consideration. But the lender incurs no penalty, unless he actually takes usury; and courts of equity, on relieving against oppression or extortion, order the repayment of the sum really loaned, or due, with the lawful interest. The moral obligation of the borrower to repay the principal sum actually loaned, with the lawful interest, is unimpaired. If the lender will expunge the usury, and the borrower voluntarily assents to repay the sum loaned with lawful interest, it is an act of justice forbidden by no principle of public policy, and which constitutes a good consideration for a new contract.

New trial not to be granted.